

**ORDERED in the Southern District of Florida on December 03, 2010.**

**A. Jay Cristol, Judge**
**United States Bankruptcy Court**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
*www.flsb.uscourts.gov*

IN RE: Case No. 09-12516-BKC-AJC
Chapter 7

**CARLOS JUSTO**,

Debtor.
_____________________________/

**JARR LOAN, LLC.,** Adv. No. 09-1460-BKC-AJC-A

Plaintiff,

-vs-

**CARLOS JUSTO,**

Defendant,
_____________________________/

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

In this adversary proceeding the Plaintiff, Jarr Loan, LLC ("Plaintiff" or "JARR"), seeks the entry of a money judgment arising from a two million dollar ($2,000,000.00) loan

(the "Loan") and a determination that any such judgment is non-dischargeable under 11 U.S.C. §523(a)(2)(A). Plaintiff alleges that the defendant Carlos Justo ("Defendant" or "Justo"), fraudulently induced Plaintiff to enter into the Loan and that Justo fraudulently diverted the loaned funds. Before the Court is Defendant's motion for summary judgment (DE 101) ("SJ Motion") and Plaintiff's cross-motion for [partial] summary judgment (DE 118) ("Cross Motion").

I. Background

Justo was the sole owner and managing member of 40 Indian Creek, LLC (the "LLC") which owned 40 Indian Creek Drive, Miami Beach, Florida (the "Property"). The Property was subject to a first mortgage issued by Great Florida Bank and later assigned to Indian Capital, LLC (the "First Mortgage"). Plaintiff alleges that in May of 2006, Justo published a Business Plan (the "Business Plan") regarding the LLC's acquisition of the Property and his business plan for the maintenance and re-sale of the Property.

Plaintiff further alleges that the Business Plan was provided to JARR, a limited liability company formed in May of 2006, for the purpose of inducing JARR to make the Loan to the LLC. On May 31, 2006, Justo, on behalf of the LLC, executed a promissory note and second mortgage on the Property (the "Second Mortgage") in favor of JARR in the amount of two million dollars ($2,000,000.00). Plaintiff alleges that the Loan funds were never transferred to the LLC for the purpose of offsetting any purchase costs or carrying costs, but were immediately diverted to Justo for his personal use.

The fraudulent inducement and alleged diversion of the Loan funds form the basis of this action in equity.

The JARR note and the Second Mortgage matured on December 1, 2006 and, upon default, Plaintiff foreclosed on the Second Mortgage on July 13, 2007. Title was issued to JARR on September 11, 2007. However, the First Mortgage holder foreclosed on August 20, 2007 and title was passed to it on October 2, 2007.

In the short interim between the two foreclosures, JARR sought to refinance the Property to protect its position. The mortgage broker ordered an appraisal (the "Appraisal"), which indicated the Property was worth twelve million dollars ($12,000,000.00). JARR then filed a motion to set aside or otherwise stay the foreclosure sale ("Motion to Stay") in the First Mortgage holder's foreclosure action. The Motion to Stay stated that JARR "has already been approved for a mortgage to purchase the interest of the first mortgage holder." It further stated "the closing of the intended mortgage will take thirty to forty-five days . . . ." As Exhibit "A" to that motion, JARR included an approval notification (the "Approval Notification"). The Approval Notification provided that the Property was worth $12,000,000.00, that the loan amount would be $8,000,000.00, and that the approval was subject to an "[a]ppraisal no less than purchase price by UMI approved Appraiser." JARR's efforts were unsuccessful and the state court denied the request for a stay and the foreclosure sale proceeded.

JARR thereafter sued Justo in the Florida state court claiming that his various fraudulent acts caused JARR's loss of the Loan funds. When Justo filed this bankruptcy, that lawsuit was resurrected as the instant adversary proceeding.

Defendant has filed a SJ Motion contending that the Plaintiff cannot maintain a claim for fraudulent inducement. The SJ Motion argues that since JARR took title to the Property prior to the foreclosure of the First Mortgage, the Property had sufficient value over the First Mortgage such that JARR was paid in full.

The Defendant must convince the Court that there is no genuine issue of material fact regarding whether JARR was paid and the debt satisfied. Accordingly, the record must sufficiently establish the fact that the Property was worth $12,000,000 (or some other amount sufficient to satisfy JARR's claim). Failing that, the Defendant must convince the Court that JARR is judicially estopped from arguing that it was not paid due to its alleged reliance on the Appraisal.

Plaintiff denies that it was paid or that its debt was satisfied by virtue of the Clerk's sale of the Property because, in its view, the Property did not have sufficient value for that purpose. Moreover, Plaintiff asserts that the Appraisal was inaccurate, negligently performed, misleading and of no evidentiary value. For this, Plaintiff relied upon the Affidavit and expert report of Donald J. Sarley (DE 117).[1] In sum, Mr. Sarley opined that

---

[1] Mr. Sarley is a licensed Real Estate Appraiser and Real Estate Appraisal Reviewer in Florida since 1979 and a Special Magistrate for the Broward County Value Adjustment Board and Palm Beach Value Adjustment Board.

the Appraisal contained inaccuracies as to facts that were wrong or were excluded from the Appraisal, rendering the Appraisal misleading and inaccurate as to its findings. More specifically: (i) that the 2007 Appraisal inadequately performed the land value adjustments to the subject property in order to properly account for water access, view and location; (ii) failed to account and document that the subject property was offered for public sale in the multiple listing service (MLS) for substantially less than the market price assigned by Mr. Garcia; (iii) did not properly adjust its conclusions to address the age factor difference between its comparables; (iv) did not have sufficient and suitable comparables to make a proper market value assessment, as the third property selected by Mr. Garcia was not indicative of the subject property and improperly selected as a comparable. Mr. Sarley opined that the true value of the Property at that time was nine million five hundred thousand dollars ($9,500,000.00).

II. Standard for Summary Judgment

A court should render summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). In assessing the parties' proffers under the rule, we view the evidence in the light most favorable to the nonmoving party…. Generally, judicial credibility determinations are not proper at the summary judgment stage of the

proceedings. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 (1986). *See* Young v. Rios 2010 WL 3069642, 1 (C.A.11 (Fla.), 2010).

III. Court may not decide opposing facts nor make finding of credibility on summary judgment.

To determine whether JARR's debt was satisfied, this Court would have to determine the value of the Property as a matter of fact. It is well established that assessing evidentiary weight and credibility are not ordinarily consistent with a ruling on a summary judgment. Nyari v. Napolitano, 562 F.3d 916 (8th Cir. 2009). It is likewise, not for a trial judge on a pretrial motion to decide whose evidence is more credible. *See* Leonard v. Dixie Well Service & Supply, Inc., 828 F.2d 291, 294 (5th Cir. 1987). Issues concerning the credibility of witnesses and weight of the evidence are questions of fact which require resolution by the trier of fact. *See* Tippens v. Celotex Corp. 805 F.2d 949, 954 (11th Cir. 1986). On this same issue, credibility challenges to plaintiffs' [*or Defendant's*] expert on damages could not be determined on motion for summary judgment. *See* In re Bulk Popcorn Antitrust Litigation, 792 F.Supp. 650 (D.C.Minn. 1992).

As stated in the case of Patterson & Wilder Const. Co., Inc. v. U.S. 226 F.3d 1269, 1273 (11th Cir. 2000):

> Summary judgment is proper only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

> Fed.R.Civ.P. 56(c). A factual dispute is genuine "if the evidence is such that a reasonable [factfinder] could return a verdict" for the non-moving party. *United States v. Four Parcels of Real Property in Greene and Tuscaloosa Counties in the State of Ala.,* 941 F.2d 1428, 1437 (11th Cir.1991) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2510, 2511-12, 91 L.Ed.2d 202 (1986)). As we have explained:
>
> In assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. All reasonable doubts about the facts should be resolved in favor of the non-movant. If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment. Burton, 178 F.3d at 1187 (quoting Clemons v. Dougherty County, 684 F.2d 1365, 1368-69 (11th Cir. 1982) (emphasis added) (citations omitted)).

In the instant case there is a genuine factual dispute as to the value of the Property on the relevant date. That dispute cannot be decided on summary judgment. The sworn testimony in the record as to the value of the Property is conflicting and therefore, to decide between the differing valuations would require this Court to weigh the evidence and make a determination of credibility which it cannot do at this stage of the litigation.

For the foregoing reasons, Defendant has failed to demonstrate that there is no genuine material issue of fact in dispute and that he is entitled to a judgment as a matter of law. *See* F.R.C.P. 56(c)(2).

IV. Defendant has not established the necessary elements of judicial estoppel.

The US Supreme Court in the case of New Hampshire v. Maine 532 U.S. 742, 749-751, 121 S.Ct. 1808, 1814-1815 (U.S. 2001), set forth the elements of judicial estoppel:

> "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis v. Wakelee,* 156 U.S. 680, 689, 15 S.Ct. 555, 39 L.Ed. 578 (1895). This rule, known as judicial estoppel, "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich,* 530 U.S. 211, 227, n. 8, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000); see 18 Moore's Federal Practice § 134.30, p. 134-62 (3d ed. 2000) ("The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding"); 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4477, p. 782 (1981) (hereinafter Wright) ("absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory").

Although we have not had occasion to discuss the doctrine elaborately, other courts have uniformly recognized that its purpose is "to protect the integrity of the judicial process," *Edwards v. Aetna Life Ins. Co.,* 690 F.2d 595, 598 (C.A.6 1982), by "prohibiting parties from deliberately changing positions according to the exigencies of the moment," *United States v. McCaskey,* 9 F.3d 368, 378 (C.A.5 1993). See *In re Cassidy,* 892 F.2d 637, 641 (C.A.7 1990) ("Judicial estoppel is a doctrine intended to prevent the perversion of the judicial process."); *Allen v. Zurich Ins. Co.,* 667 F.2d 1162, 1166 (C.A.4 1982) (judicial estoppel "protect [s] the essential integrity of the judicial process"); *Scarano v. Central R. Co.,* 203 F.2d 510, 513 (C.A.3 1953) (judicial estoppel prevents parties from "playing 'fast and loose with the courts' " (quoting *Stretch v. Watson,* 6 N.J.Super. 456, 469, 69 A.2d 596, 603 (1949))). Because the rule is intended to prevent "improper use of judicial machinery," *Konstantinidis v. Chen,* 626 F.2d 933, 938 (C.A.D.C. 1980), judicial estoppel "is an equitable doctrine invoked by a court at its discretion," *Russell v. Rolfs,* 893 F.2d 1033, 1037 (C.A.9 1990) (internal quotation marks and citation omitted).

Courts have observed that "[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle," *Allen,* 667 F.2d, at 1166; accord, *Lowery v. Stovall,* 92 F.3d 219, 223 (C.A.4 1996); *Patriot Cinemas, Inc. v. General Cinema Corp.,* 834 F.2d 208, 212 (C.A.1 1987). Nevertheless, several factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be "clearly inconsistent" with its earlier position. *United States v. Hook,* 195 F.3d 299, 306 (C.A.7 1999); *In re Coastal Plains, Inc.,* 179 F.3d 197, 206 (C.A.5 1999); *Hossaini v. Western Mo. Medical Center,* 140 F.3d 1140, 1143 (C.A.8 1998); *Maharaj v. Bankamerica Corp.,* 128 F.3d 94, 98 (C.A.2 1997). Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled," *Edwards,* 690 F.2d, at 599. Absent success in a prior proceeding, a party's later

> inconsistent position introduces no "risk of inconsistent court determinations," *United States v. C.I.T. Constr. Inc.,* 944 F.2d 253, 259 (C.A.5 1991), and thus poses little threat to judicial integrity. See *Hook,* 195 F.3d, at 306; *Maharaj,* 128 F.3d, at 98; *Konstantinidis,* 626 F.2d, at 939. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. See *Davis,* 156 U.S., at 689, 15 S.Ct. 555; *Philadelphia, W., & B.R. Co. v. Howard,* 13 How. 307, 335-337, 14 L.Ed. 157 (1851); *Scarano,* 203 F.2d, at 513 (judicial estoppel forbids use of "intentional self-contradiction ... as a means of obtaining unfair advantage"); see also 18 Wright § 4477, p. 782.

a. Defendant cannot establish the element of success.

Defendant cannot establish judicial estoppel based on the Appraisal as a matter of law. The U.S. Supreme Court in Reed Elsevier, Inc. v. Muchnick 130 S.Ct. 1237, 1249 (2010), just recently restated that:

> As we explained in *New Hampshire,* that doctrine typically applies when, among other things, a "party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *Id.,* at 750, 121 S.Ct. 1808 (internal quotation marks omitted).

When JARR attached the Approval Notification to the Motion to Stay filed in the state court foreclosure action, it accomplished nothing. The state court was unpersuaded by the motion and it was consequently denied, allowing the foreclosure sale to proceed. It is unclear from the record whether the state court judge even considered the Appraisal.

At its most basic level, judicial estoppel cannot apply as a matter of law given that JARR had not "*succeeded in persuading a court to accept that party's earlier position*."

Id. *See also* Pegram v. Herdrich 530 U.S. 211, 228, 120 S.Ct. 2143, 2154 (U.S. 2000) ("Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.")

b. Defendant cannot establish element of sworn statement.

The Eleventh Circuit, in Burnes v. Pemco Aeroplex, Inc. 291 F.3d 1282, 1285 (11th Cir. 2002) held that "[j]udicial estoppel is applied to the calculated assertion of divergent sworn positions." In Salomon Smith Barney, Inc. v. Harvey 260 F.3d 1302, 1308 (11th Cir. 2001), the Eleventh Circuit further held that:

> This circuit's approach contemplates two elements. First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system. *See id.; Taylor v. Food World Inc.,* 133 F.3d 1419, 1422 (11th Cir. 1998) *; Johnson Service Co. v. Transamerica Ins. Co.,* 485 F.2d 164, 174-75 (5th Cir. 1973). (*Emphasis ours*).[2]

Again, at its most basic level, judicial estoppel cannot apply as a matter of law given that JARR made no sworn statement, and any inconsistencies arising from the Appraisal do not appear to have been intended to, or in fact did make a mockery of these proceedings.

---

[2] *See also* Robinson v. Tyson Foods, Inc. 595 F.3d 1269, 1275 (C.A.11 (Ala.),2010): "When considering a party's intent for the purpose of judicial estoppel, we require "intentional contradictions, not simple error or inadvertence."

Based on the foregoing, Defendant has failed to sufficiently establish all of the necessary elements of judicial estoppel. There is no evidence in the record that Plaintiff "presented" the Appraisal or Approval Notification to the Florida state court, nor that JARR (or the state court in its order denying the Motion to Stay) relied upon either the Appraisal or the Approval Notification. In addition, the parties to the First Mortgage foreclosure action, wherein the Motion to Stay was filed, were not the same parties that are before this Court. As such, the Defendant has failed to present sufficient evidence to maintain the defense of judicial estoppel as a matter of law. To the contrary, since judicial estoppel clearly does not apply, the Cross Motion must be granted. It is therefore

ORDERED AND ADJUDGED that

1. Justo's SJ Motion (DE 101) is DENIED.
2. JARR's Cross Motion (DE 118) is GRANTED, and JARR is not judicially estopped from questioning or impeaching the Appraisal or its author, and is not estopped from presenting evidence which contradicts the Appraisal.

# # #

Copies furnished to:

David Softness, Esq.
Joel Tabas, Esq.

Attorney Softness is directed to serve a conformed copy of this order upon all interested parties immediately upon receipt of same and shall file a certificate of service with the Court.